STATE ex inf. HADLEY, Attorney-General, v. MISSOURI PACIFIC RAILWAY COMPANY et al. —Two Cases with Same Title.

In Banc, July 2, 1907.

1. QUO WARRANTO: Pleading. The pleadings in a proceeding in *quo warranto* are not governed by the rules of pleading stated in the Code of Civil Procedure.

2. ———: ———: Information: Demurrer. An information filed by the Attorney-General *ex officio* is not of the character of a petition in an ordinary case either in law or equity. It is an official call of the State upon the corporation or individual to show by what authority it or he is assuming to exercise a particular franchise. To the charge that defendant has unlawfully usurped and is exercising that particular franchise, stated in a general way, defendant cannot demur on the ground that the information is not sufficiently specific in detailing the facts which constitute the usurpation.

3. ———: ———: ———: General Denial: Necessary Plea. Nor is there any such plea as a general denial in *quo warranto*. Where the information charges unlawful usurpation and calls on defendants to show by what authority they assume to

exercise a particular franchise, defendants must answer, either by specifically denying the charge, or by stating the facts which in their opinion justify them in doing what they are charged with doing.

4. ——: ——: ——: **Surplusage.** Statements of unnecessary facts in the information in *quo warranto* by the Attorney-General *ex officio* will be treated as surplusage.

## Quo Warranto.

DEMURRER OVERRULED.

## STATEMENT BY THE REPORTER.

The Attorney-General *ex officio* filed his informations in this court against the defendants, in two separate cases, charging them all as corporations doing business in this State, and some of them as organized under the laws of Missouri, with having unlawfully usurped and with having unlawfully exercised certain particular franchises, and setting out the facts which, it is alleged, were in violation of the Constitution and laws of this State. In one of the cases the respondents are the Missouri Pacific Railway Company, the Western Coal & Mining Company, the Rich Hill Coal & Mining Company and the Kansas-Missouri Elevator Company. In the other case, the respondents are the Missouri Pacific Railway Company, the St. Louis, Iron Mountain & Southern Railway Company, the Wabash Railroad Company, the Pacific Express Company and the American Refrigerator Transit Company.

In the first case it is alleged in the information that "the Missouri Pacific Railway Company is a railroad corporation and possesses under its charter the powers, privileges and liberties conferred by the laws of the State of Missouri upon railroad corporations, and none others;" that the powers, privileges, liberties and rights conferred are such as "are necessary,

and convenient for and incident to the construction, maintenance and operation of a railroad as a public highway, and none others." That the Western Coal and Mining Company is a corporation organized as a manufacturing and business corporation for the purpose "of carrying on a general coal and mining business in the States of Missouri and Kansas and the Indian Territory and elsewhere, with power to purchase, lease and otherwise acquire and hold, sell, convey and release coal, mineral and other lands, for the purpose of mining coal and other minerals, manufacturing coke, buying, selling and bartering the same, buying, owning and controlling stocks and properties of other coal and mining companies, and buying and owning all such property, tools, implements and machinery, carts, wagons and all other things necessary and convenient to and for the purposes of the business of the corporation." That the Rich Hill Mining Company is a corporation organized as a manufacturing and business corporation under the laws of the State of Missouri for the purpose of "purchasing, leasing and otherwise acquiring and owning coal, mineral and other lands, mining coal and other mineral, manufacturing coke, buying, selling and bartering the same, and of acquiring and owning all such property, tools, implements and other things as might be necessary or convenient for the business of the corporation."

That the Kansas-Missouri Elevator Company is a corporation organized as a manufacturing and business corporation under the laws of the State of Missouri for the purpose of "leasing and constructing elevators and other buildings, machinery, for the purpose of carrying on a general elevator business, including the receiving, handling and storing of grain and other merchandise, and of issuing receipts therefor, and for charging and collecting from the owners thereof reasonable charges for such services, and for the doing of such other things

as might be necessary or incident to the business of such corporation."

It is then alleged that the Western Coal and Mining Company, the Rich Hill Coal Mining Company and the Kansas-Missouri Elevator Company, upon their organization, "engaged in the business declared in their charters, and continued in the conduct of such business until their capital stock was acquired by the Missouri Pacific Railway Company"; that the Missouri Pacific Railway Company has, from time to time, since the organization of each of these companies, bought and acquired the shares of the capital stock thereof until it has, holds and owns and for more than a year past has held and owned each and every share of the capital stock of each of said companies, and that it "conducts, controls and manages all the business, affairs and operations of each of these companies;" "that the acquisition, owning and holding by the Missouri Pacific Railway Company of the shares of stock of said coal mining companies and said elevator company, and the conduct, control and management exercised by said railway company of the business, affairs and operations of said coal mining companies and said elevator company were not necessary or incident to the construction, maintenance and operation of said railroad as a public highway and common carrier."

It is further alleged that by reason of the acquisition of all of the shares of the capital stock of each of these three companies each had "lost its integrity, independence and individuality, and had been rendered incapable and unable to exercise its powers, privileges, liberties, rights and franchises, and to transact its business in manner, form and substance as by law and the public welfare required, as a distinct corporate institution, and has become a mere cover for and the instrumentality of the usurpation of the powers, privileges, liberties, rights and franchises" of coal mining, eleva-

tor, business and manufacturing companies by the said Missouri Pacific Railway Company.

The information alleges that the Missouri Pacific Railway Company has been guilty of a usurpation of franchises in this: (1) That it has acquired all the shares of stock of each of the coal mining companies and elevator company, and conducts, controls and manages all the business, affairs and operations that each of these companies was authorized by the State of Missouri to do and perform, and that the ownership of such stock, and the conduct, control and management of their business, affairs and operations "were not necessary or incident to the construction, maintenance and operation of said railroad as a public highway." (2) It charges that each of these companies has been guilty of a perversion, abuse or abandonment of their franchise of existence as a corporation, in that their stockholders had suffered or permitted all of the stock of each of the companies to become the property of the Missouri Pacific Railway Company, and that thereby each of these corporations has ceased to become a corporation in that they were no longer an aggregation of individuals, no longer a corporation with individual stockholders, and that they had thereby lost their integrity, autonomy, independence and individuality, were rendered incapable to discharge their powers, franchises and obligations to carry on their business as by law and the public welfare required, and had become a mere cover and instrumentality of the usurpations of franchise by the Missouri Pacific Railway Company, through which it was engaging in a business not authorized by its charter.

To this information the respondents filed a demurrer:

1. On the ground that it does not state facts which show that respondents have, or that any of them has, committed any act or acts which are not authorized by

their charters, or that they have violated the Constitution, laws or the public policy of the State of Missouri.

2. The information affirmatively shows that respondents have exercised only such powers as they might lawfully exercise under their charters.

3. That the information shows that respondents have violated no provision of the Constitution or laws of Missouri or done any act contrary to the public policy of this State, as expressed in its Constitution or laws.

The information in the other case alleged that the Missouri Pacific Railway Company, the St. Louis, Iron Mountain & Southern Railway Company, and the Wabash Railroad Company, are all railroad corporations organized and existing under the laws of this State, engaged in the operation of lines of railroads as common carriers, and that the principal lines of the Wabash Company and the Missouri Pacific Company in the State are parallel and competing lines; that the Pacific Express Company, hereafter known as the Express Company, is a corporation organized and existing under the laws of the State of Nebraska, licensed to and doing business as a common carrier of express freight in the State of Missouri; that the American Refrigerator Transit Company, hereinafter known as the Refrigerator Company, is a corporation organized and existing under the laws of the State of Illinois, licensed to and doing business in this State as a common carrier of freight carried in cold storage; that the Missouri Pacific Company owns practically all the stock of the Iron Mountain Company, and the two companies are managed and controlled by the same persons, have their principal officers in common, and are in practical effect one company; that George J. Gould and Frank J. Gould are large stockholders in the Pacific Company, and acting in concert with other stockholders therein,

206 Sup—3

control and manage the business, affairs and operations of the Missouri Pacific Company, and through the Missouri Pacific Company the business affairs and operations of the Iron Mountain Company; that said Goulds and the other stockholders in said Missouri Pacific Company who control it and the Iron Mountain Company also own a large number of the shares of stock and debenture bonds of the Wabash Company, that they have caused the Iron Mountain Company and the Missouri Pacific Company to purchase a large number of the shares of stock and debenture bonds of the Wabash Company, which debenture bonds are accorded a voting power in the management of said company; that by virtue of the acquisition of said stock and bonds by said Missouri Pacific and Iron Mountain Company there has been established a community of interest between the Wabash Company and the Missouri Pacific Company, competition between the two has been destroyed, and they have been brought under the same domination and control; that the Wabash Company and the Missouri Pacific Company own and hold a controlling interest in the stock of the Express Company, which is thus brought under the domination and control of the Wabash and Missouri Pacific companies, and is the only party which does conduct or is permitted to conduct an express business over the lines of the Iron Mountain, Wabash and Missouri Pacific Companies; that the Iron Mountain, the Missouri Pacific and Wabash companies own all the stock of the Refrigerator Company, and the business of that company is managed, directed and controlled by the Wabash Company and Iron Mountain Company, and that competition for the carriage of freight transported in cold storage is thereby limited, restricted and destroyed upon the lines of said Wabash, Missouri Pacific and Iron Mountain companies. It is then alleged that each of these acts alleged to have been committed by the respondents herein is violative of

their charters and the Constitution, laws and public policy of the State of Missouri, and constitutes a usurpation, and that "each and all of the unlawful arrangements, acts, doings and usurpations herein set forth have been done and performed by said respondents, their officers and members in furtherance of, by reason of and as part, parcel and elements of an unlawful combination and conspiracy between the several corporations, respondents herein, their officers and members, to prevent and destroy all competition between said railway companies in the conduct of their business as common carriers, and to prevent and destroy all competition between said Express and Refrigerator companies, and other express and refrigerator companies, in the conduct of their business as common carriers on the lines of railroads belonging to said railway companies, to conduct and manage the business of said Express Company and said Refrigerator Company, and to operate the lines of railway belonging to said railway companies, and to conduct all traffic over the same under one and the same domination and control, and to effect a combination of parallel and competing lines of railroad, for the mercenary advantage of said corporations, their officers and members."

To this information the defendants interposed a demurrer on the ground that the facts set forth therein do not justify the relief prayed for, or any relief.

*Alexander G. Cochran* and *Martin L. Clardy* for respondents.

The respondents, in their brief filed in support of their demurrers, discuss the merits of the case, and say, as to the first information the facts therein charged are not unlawful: (1) Corporations have not only the powers expressly granted to them, but those which are necessarily implied; while it is true they derive all their power from the legislature which creates them,

it is also true that what is fairly implied is as certainly granted as what is expressed; in other words, no corporation can be invested with the right to go into the business for which it has been incorporated without carrying with it an implied right to do things, and perform acts in connection with its carrying out of the purposes for which it is incorporated; that, unless restrained by their charters or the law of the State, they have the power to deal precisely, in carrying out their corporate purposes, as individuals seeking to accomplish the same ends; that they may resort to any means that would be necessary and proper for an individual in executing the same, unless they be prohibited by the terms of their charters or some public law from so doing; that while in regard to their express powers, the grants are construed most liberally in favor of the State, and most strictly against the corporation, yet, in regard to incidental powers, neither strict nor liberal, but only reasonable rules of construction are applied; that corporations may even so far develop and extend their operations as to engage in matters not primarily contemplated by their founders, provided such matters be fairly within their scope, and that, in so developing and extending their undertakings they employ direct, and not indirect means; that "necessary," when used in defining the powers of corporations, does not mean simply what is indispensable, but also what is useful, convenient and proper to carry into effect the franchise granted. Greene's Bryce on Ultra Vires, pp. 66-91; Ellerman v. Stock Yards Co., 49 N. J. Eq. 217; 2 Cook Stock. and Corp. Law, sec. 681; Malone v. Lancaster Gas Light & Fuel Co., 37 Atl. Rep. 932; 23 Am. and Eng. Ency. Law, 680; Ry. & Nav. Co. v. Hooper, 160 U. S. 514; Railroad v. Union, Etc. Co., 107 U. S. 98; Todd v. Union Land Co., 57 Fed. 47; 2 Purdy's Beach on Priv. Corp., pp. 12-28-29; Endlich on Interpretation of Statutes, sec. 418; Ft. Worth City Co. v. Smith

Bridge Co., 151 U. S. 294; Pennsylvania Co. v. Bridge Co., 131 U. S. 371; Brewing Co. v. Fraatz, 123 Ill. App. 26; 1 Elliott on Railroads, sec. 38; 1 Wood's Railway Law, sec. 169; 1 Spellman on Priv. Corp., secs. 68, 73 and 75; Western Boatmen's Benev. Assn. v. Kribben, 48 Mo. 37.  (2)  A railroad company may own elevators, or stock in elevator companies, or acquire coal mines or stock therein, as incidental to the operation of its lines of road, and to enable it to serve the public the better.  Railroad v. Nebraska, 164 U. S. 403; Gurney v. Minneapolis & Union Elev. Co., 65 N. W. 136; Memphis Grain & Elev. Co. v. Memphis C. R. Co., 5 S. W. 52; Railroad v. Wathem, 17 Ill. App. 582; In re Application New York Central, 77 N. Y. 248; Railroad v. Kipp, 46 N. Y. 546; Railroad v. McKissock, 140 U. S. 304. In support of their demurrer to the second information respondents make the following points and cite authorities:  (1)  The individual stockholders of Pacific Express Company and of Refrigerator Transit Company had the right to sell their stock to the railroads if they saw fit. Any such sale was the act of the stockholder selling, and not the act of the corporation whose stock was sold. The corporation could not be held accountable because it sold no stock, and the stockholder could not be complained of because he had a right to sell his stock to whom he pleased. Commonwealth ex rel. v. Punxsutawney Water Co., 47 Atl. 843.  (2)  The complaint of the State on account of the ownership of this Pacific Express Company stock by the Wabash Company and by the Missouri Pacific Company seems to be that such ownership has given to the Pacific Express Company the exclusive right to do express business on the lines of the Iron Mountain Company, the Missouri Pacific Company and the Wabash Company.  But it confers no such right.  Express companies are common carriers, made such by law.  Any express company, or-

ganized or authorized to do business under the laws of Missouri, can avail itself of "transportation and other proper facilities to carry on its business" on the lines of the railroads named, and such railroad companies can not "charge, take from or receive any greater or different toll, charge or rent for the privilege of carrying on their said express business or for like services, than they at the same time charge or receive from any other express company." Secs. 1157-1158, R. S. 1899. The validity of the Missouri statute, Laws 1889, p. 53, enacted after the decision in the Express Cases, 117 U. S. 1, may be assumed in this case. (3) It is a fact, of which the court will take judicial notice, that the Wabash Company has other lines of road extending eastward from St. Louis to Toledo, Ohio, Buffalo, N. Y., Pittsburg, Pa., and Chicago, Ill., and that it is a continuous line with the Missouri Pacific Company and also the Iron Mountain Company, whose eastern and northern terminus, respectively, is St. Louis. This being true, section 1061, Revised Statutes 1899, would give to either company the right to purchase and hold the capital stock of the other.

*Herbert S. Hadley*, Attorney-General, and *John Kennish*, Assistant Attorney-General, for the State; *F. W. Lehmann* of counsel.

Counsel for informant made the following points in support of the sufficiency of the information: (1) The sufficiency of the pleading must be determined by the rules in reference to civil proceedings. As is said in 2 Spelling on Extraordinary Legal Remedies, section 1846, in reference to proceedings in *quo warranto,* they should "be commenced and prosecuted like other civil actions and are governed in respect to the pleadings by the same rules." People v. Railroad, 1 Lans. (N. Y.) 308; Com. v. Bank, 28 Pa. St. 391; State v.

Anderson (Fla.), 8 So. 1; State v. Commercial Bank, 10 Ohio 535; State v. Hardie, 1 Ired.(N. C.) L. 42; State v. Kupferle, 44 Mo. 154; Bishop v. State, 149 Ind. 223. And as was said by the Supreme Court of Missouri in the case of State v. Kupferle, supra: "The information, answer and reply are subject to the rules governing corresponding pleadings in strictly civil cases, the information in this regard answering to the petition in civil suits." (2) While the rules of pleading in civil cases have been applied to proceedings in *quo warranto*, yet it is not necessary that there should be stated in the information in detail the acts constituting the usurpations charged. It is only necessary that the respondent should be informed by the information of the franchises alleged to be usurped in terms of sufficient definiteness so that they can properly disclaim or justify. 17 Ency. Pl. & Pr., p. 458; Palmer v. Woodbury, 14 Cal. 43; People v. Railroad, 12 Mich. 398; People v. Insurance Co., 15 Johns. 358; People v. Turnpike Railroad, 23 Wend. 193; People v. Niagara Bank, 6 Cow. 196; Com. v. Bank, 28 Pa. St. 391; People v. Dashaway Assn., 84 Cal. 119; Territory v. Railroad, 2 Mont. 109; Commonwealth v. Sturdevant, 182 Pa. St. 332; 2 Spelling on Extra. Leg. Rem., secs. 1851, 1853, 1855; State ex rel. v. Talbot, 123 Mo. 71. (3) Where the act sought to be accomplished by a conspiracy or concerted action upon the part of two or more persons is unlawful at common law, it is sufficient to state the object of the conspiracy in general terms. 4 Ency. Pl. and Pr., p. 713; Com. v. Eastman, 1 Cush. 190; State v. Parker, 43 N. H. 84; People v. Saunders, 25 Mich. 119; Hazen v. Commonwealth, 23 Pa. St. 363. And where a combination or conspiracy is for a purpose which is prohibited by statute, the purpose of the combination need be set out only in such a manner as to show that it is within the terms of the statute.

Com. v. Eastman, supra; State v. Parker, supra; United States v. Gardner, 42 Fed. 831; Landringham v. State, 49 Ind. 186; Hazen v. Commonwealth, supra; Cole v. People, 84 Ill. 216.

The court overruled the demurrers, and in connection therewith rendered the following opinion, which is printed in advance of a decision on the merits:

PER CURIAM:—In overruling the demurrers in these cases the court does not decide any of the questions touching the merits, which were discussed in the oral arguments. The only point decided is that these informations are sufficient to require the defendants to answer the charges made by the Attorney-General against them, either by specifically denying the charge or stating the facts which in the opinion of the defendants justify them in doing what they are charged with doing.

The pleadings in a proceeding of this nature are not governed by the rules of pleading stated in the Code of Civil Procedure; the only provision of the Code that is extended to a proceeding in *quo warranto* is contained in section 675, Revised Statutes 1899, relating to amendments.

An information in the nature of *quo warranto* filed by the Attorney-General is not of the character of a petition in an ordinary case either in law or equity; it is the official call of the Law Officer of the State on the corporation or individual to show by what authority it or he is assuming to exercise a particular franchise. The rules of pleading in such case are thus stated in 17 Ency. Pl. and Pr., 457, 458: "The office of an information in the nature of a *quo warranto* is not to tender an issue of fact, but simply to call upon the defendant in general terms to show by what warrant or charter the privilege, franchise, or office is held or exercised. Where the State calls upon one to show

cause by what authority he exercises a corporate franchise or public office, the allegation by the Attorney-General of intrusion or usurpation may be of the most general character, while the defendant is required to set forth particularly the grounds of his claim and the continued exercise of his right, except where by statute the pleadings are more nearly assimilated to those in other civil actions." In this State we have no such statute. The same author, at page 467, says: "When one is called upon by the State to show warrant or authority for the exercise of a franchise or office pertaining to the State, the defendant must, by his plea, answer or return, disclaim all right to the franchise and deny its usurpation, or allege facts which, if true, will invest him with the legal title of pleading the charter or legislative grant of the franchise sought to be forfeited or seized, or by pleading directly and positively all the facts necessary to establish the title to the office which the defendant is called upon to justify; and in the absence of such an answer the State will be entitled to a judgment of ouster." There is no such plea as a general denial in a case of this kind.

If these defendants are not doing what the Law Officer of the State, in a general way, charges them with doing, let them specifically deny the charge; if they are doing it or doing something like it and think they are justified in so doing, let them specifically state it in their answers.

These demurrers go mainly on the idea that the informations are not sufficiently specific in detailing the facts which constitute the charge of usurpation; that idea is out of place in this kind of proceeding; the State calls on these corporations to answer and the duty of pleading specifically the facts rests on them.

In these cases the Attorney-General has (doubtless induced by a practice heretofore tolerated), made more

statements of fact than necessary, but they are treated as surplusage.

The demurrers are overruled and defendants given until September 1 to make return.